# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JAMI L. HENDRIX, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 21-00004-CV-W-WBG |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

### ORDER AND OPINION AFFIRMING THE ACTING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff Jami L. Hendrix's appeal of Defendant Acting Commissioner of Social Security's final decision denying her application for disability insurance benefits. After carefully reviewing and considering the record and the parties' arguments, the Acting Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Plaintiff was born in 1981 and has a high school education. R. at 30, 66, 68, 128. Her past relevant work includes store manager, salesclerk, and pharmacy technician. R. at 30, 83. In November 2018, Plaintiff protectively filed an application for disability insurance benefits, alleging a disability onset date of August 8, 2018. R. at 21, 128-29. Her application was denied, and she requested a hearing before an administrative law judge ("ALJ"). R. at 105-08, 110-11.

On January 22, 2020, ALJ Mary J. Leary conducted a video hearing. R. at 58-88. Thereafter, on April 1, 2020, the ALJ issued her decision finding Plaintiff is not disabled. R. at 21-32. She concluded Plaintiff's severe impairments are migraines, obesity, schizoaffective disorder, anxiety, and depressive disorder. R. at 23. Additionally, the ALJ found Plaintiff has the

residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> [S]he can occasionally climb ramps and stairs; she must never climb ladders, ropes, and scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she must avoid concentrated exposure to vibration, noise, respiratory irritants such as fumes, odors, dust, gases, and poor ventilation, and hazards such as dangerous moving machinery and unprotected heights; she can understand, remember, and carry out uncomplicated commands involving simple instructions and make simple work-related decisions; she can sustain concentration, persistence, and pace through simple tasks; she can tolerate occasional interaction with coworkers and supervisors but no contact with the general public; and she can tolerate occasional changes in the work-setting.

R. at 26. Based on her review of the record, the RFC determination, and the hearing testimony, the ALJ concluded Plaintiff could work as a battery assembler, non-government mail clerk, and checker. R. at 31. Plaintiff unsuccessfully appealed the ALJ's decision to the Appeals Council. R. at 1-4, 125-27. She now appeals to this Court. Doc. 3.

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether the Commissioner's decision complies with relevant legal standards and whether substantial evidence supports the Commissioner's findings. 42 U.S.C. § 405(g); *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020); *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted). An ALJ "may not silently disregard" duly promulgated regulations by the Social Security Administration. *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003). A failure to follow applicable regulations constitutes legal error. *See id.* at 695. No deference is owed to the ALJ's legal conclusions. *Id.* at 692. A challenge to the procedures used by the ALJ is reviewed de novo. *See id.*

Regarding sufficiency of the evidence, a reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). The threshold for such evidentiary sufficiency is not high. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted). In evaluating for substantial evidence, a court must consider evidence supporting as well as evidence detracting from the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2015).

"As long as substantial evidence in the record supports the Commissioner's decision, [a reviewing court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner adopted one of those positions, [the court] must affirm." *See Anderson*, 696 F.3d at 793 (citation omitted). This Court "will disturb the ALJ's decision only if it falls outside the available zone of choice." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (citation omitted). A decision does not fall "outside the zone of choice simply because this Court might have reached a different conclusion had we been the initial finder of fact." *Id*. (citation and internal quotation marks omitted).

### III. DISCUSSION

Plaintiff contends the Acting Commissioner's decision must be reversed because the ALJ's RFC is legally flawed and not supported by substantial evidence, and the ALJ's decision is otherwise unsupported by the record. Doc. 13 at 24-33.

3

**A.     The ALJ's RFC**

Specific to the ALJ's RFC, Plaintiff argues (1) the ALJ erred by assessing the exertional level first and not providing a function-by-function analysis, and (2) the mental functional limitations are not supported by substantial evidence. Doc. 13 at 24-31. One's RFC is the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ must base the RFC on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The RFC "must be supported by some medical evidence" but does not need to "be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

**(1)     Exertional Level Assessment and Function-by-Function Analysis**

Plaintiff maintains the ALJ incorrectly assessed her exertional level first and failed to provide a function-by-function analysis, thereby violating a Social Security Administration policy interpretation ruling. Doc. 13 at 24. Per the policy interpretation ruling, the RFC provides an assessment of a person's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."[1] Soc. Sec. Admin., Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *1 (July 1, 1996). The RFC identifies "the individual's functional limitations and restrictions" and assesses the individual's "remaining capacities for work-related activities." *Id*. at *2. The ALJ may not "simply describe the RFC in general terms" but is not required to "mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th

---

[1] "[R]egular and continuing basis" is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Soc. Sec. Admin., Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *1 (July 1, 1996).

Cir. 2011) (citation and internal quotation marks omitted); *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003). This Court reviews the record to ensure "an ALJ does not disregard evidence or ignore potential limitations." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090-91 (8th Cir. 2018) (citation omitted).

### (a) Plaintiff's Physical Conditions and Limitations[2]

When applying for benefits, Plaintiff reported gastroparesis, bad hip, bad ankles, and debilitating migraines as her physical conditions limiting her ability to work. R. at 89-90, 179. The ALJ found Plaintiff's gastroparesis and ankle sprain(s) were not severe impairments. R. at 23-25. Plaintiff did not appeal the ALJ's finding on either condition, and she does not argue in this appeal (nor does the evidence demonstrate) either condition limits her ability to work.[3] Plaintiff does not argue her hip limits her ability, and the Court observes no limitations caused by her hip are in the record.[4] During oral argument before the undersigned, Plaintiff's counsel stated the only physical impairment at issue is migraines, which the ALJ found was severe. R. at 23.[5]

### (b) Physical Limitations in the RFC

The record demonstrates the ALJ evaluated Plaintiff's physical limitations and assessed her abilities to perform work activities. *See* R. at 23-30. During the hearing, the ALJ asked

---

[2] Plaintiff does not argue the ALJ failed to assess her mental limitations on a function-by-function basis. *See* Doc. 13.

[3] Plaintiff slipped on steps and injured her ankles in January 2018. R. at 263. At that time, imaging revealed a "normal" left ankle and "moderate soft tissue swelling" in her right ankle. R. at 265. Thereafter, from March 2018 through at least December 2019, Plaintiff consistently reported no ankle swelling. R. at 268, 317, 329, 340, 360, 373, 386, 396, 435, 453, 487, 506, 520, 581, 1338. In November 2019, December 2019 and January 2020, a medical professional found neither ankle was tender, and both had good range of motion and normal strength. R. at 1359, 1364, 1369. These appear to be the only records pertaining to Plaintiff's ankles.

[4] In fact, when Plaintiff's hips were evaluated by a medical professional, no tenderness or acute symptoms were noted, and both hips had good range of motion and normal strength. R. at 1359, 1364, 1369.

[5] Plaintiff's reply brief, which was filed before oral argument, only mentioned her obesity and migraines as her physical limitations, tacitly admitting her gastroparesis, hip, and ankle(s) do not limit her ability to work. Doc. 21 at 1 ("Defendant's argument asks the Court to believe that an individual with 'severe' obesity and migraine headaches would have no standing, walking, sitting, or pushing and/or pulling limitations.").

Plaintiff if she had "any physical problems." R. at 77. Plaintiff responded, "No. I shake a lot. I guess that might be something." *Id*. The ALJ also inquired if any doctors placed restrictions on Plaintiff. R. at 81. She responded in the negative. *Id*. Regarding physical limitations, Plaintiff testified she tries "to walk now and then," can walk the stairs in her apartment without assistance, lift up to twenty pounds, sit for about thirty minutes before she starts to get "a little anxious," and stand for roughly thirty minutes before she gets "real anxious" or "antsy." R. at 67, 68, 73, 81-82.

The medical records demonstrate Plaintiff has little to no exertional limitations. SSR 96-8p, 1996 WL 374184, at *5 ("Exertional capacity . . . defines the individual's remaining ability to perform . . . seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling."). On numerous occasions, Plaintiff reported no difficulty walking. *See, e.g.*, R. at 268, 317, 329, 340-41, 360, 373, 386, 396, 435, 453, 487, 506, 520, 581, 1338. And medical professionals repeatedly observed Plaintiff had a normal or steady gait. *See, e.g.*, R. at 269, 271, 318, 330, 342, 362, 375, 388-89, 435, 464, 487, 494, 521, 533, 569, 578, 582, 599, 616, 628, 696, 717, 808, 1005, 1223, 1339, 1359, 1364, 1370. Healthcare providers also reported Plaintiff's hands gripped, pushed, and pulled equally. R. at 579, 612.

Regarding migraines and headaches, Plaintiff testified she experiences three migraines per week. R. at 77. But the ALJ noticed Plaintiff's headache complaints were intermittent. R. at 28. While Plaintiff received some treatment for headaches, the ALJ observed medical professionals reported concerns that Plaintiff presented to the emergency room with a headache or migraine to obtain narcotics, she displayed "exaggerated pain behaviors," she exhibited worse symptoms when she saw a nurse, and she became angry when not prescribed narcotics. R. at 28 (citing R. at 271, 288, 340-41, 440, 454, 464, 494, 582, 598, 911). The ALJ also observed Plaintiff had not been referred to a headache care clinic or neurologist and had "not required aggressive treatment for

6

headaches, such as trigger point injections, occipital nerve blocks, or Botox injections." *Id*. Nonetheless, Plaintiff does not argue or cite anything in the record suggesting her migraines cause exertional limitations. *See* Doc. 13.

Pursuant to the policy interpretation ruling on which Plaintiff bases her argument, "when there is no allegation of a . . . limitation or restriction of a specific functional capacity," and there is "no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." SSR 96-8p, 1996 WL 374184, at *3. Although Plaintiff admitted no physical problems, the ALJ evaluated symptoms that were consistent with the objective medical evidence, medical opinions, medical records, and other evidence in the record. R. at 26-30. She also assessed "the combined effects of the claimant's obesity with her other impairments in determining" the RFC. R. at 28. Only after considering the record did the ALJ assess Plaintiff's exertional level. R. at 26-30. Contrary to Plaintiff's argument, the ALJ did not assess the exertional level first.

Based on her review and analysis, the ALJ determined Plaintiff's exertional limitations allowed her to perform light work[6] with several additional physical limitations related to climbing, stooping, balancing, kneeling, crouching, crawling, and exposure to vibration, noise, respiratory irritants, and hazards. R. at 26. The ALJ set forth an RFC that was well-defined. And she did not disregard evidence or ignore potential limitations. *See supra*, section III(A)(1)(b). The Eighth Circuit recently rejected a similar argument that the ALJ violated SSR 96-8p for failing to assess the RFC on a function-by-function basis. *Nash*, 907 F.3d at 1090-91 (citation omitted); *see also Menter v. Kijakazi*, No. 20-CV-003198-S-DGK, 2022 WL 188146, at *2 (W.D. Mo. Jan. 20,

---

[6] The ALJ indicated "light work" is defined in 20 C.F.R. § 404.1567(b). R. at 26. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requires "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

2022). By finding Plaintiff can perform light work as defined by the applicable regulation with a number of specific limitations as outlined above, the RFC was not so vague or general so as to prevent the undersigned from determining whether the RFC is supported by substantial evidence. Accordingly, the Court finds no merit to Plaintiff's argument that the ALJ erroneously assessed Plaintiff's exertional level first and/or failed to conduct a function-by-function analysis.

### (2) Mental Limitations

Plaintiff contends the RFC's mental limitations are not supported by substantial evidence because (a) certain limitations set forth by state agency psychologist J. Edd Bucklew, Ph.D., were not included in the RFC; and (b) the ALJ improperly rejected the opinion of Jerry Morris, Psy.D., and failed to include limitations he identified. Doc. 13 at 26-31.

#### (a) Dr. Bucklew

##### (i) *Moderately Limited Ability to Carry Out Detailed Instructions*

Plaintiff argues the RFC should have included Dr. Bucklew's opinion that she was moderately limited in her ability to carry out detailed instructions. Doc. 13 at 26-27 (citing R. at 99). Although Dr. Bucklew found Plaintiff had a moderately limited ability to carry out detailed instructions, he also concluded she could carry out short and simple instructions, make simple work-related decisions, accept instructions from supervisors, and ask questions or request assistance. R. at 99-100. In addition, he opined Plaintiff did not have memory or understanding limitations. R. at 99.

Based on the record, including Dr. Bucklew's opinion, the ALJ's RFC limited Plaintiff to, among other things, understanding, remembering, and carrying out "uncomplicated commands involving simple instructions." R. at 26. The RFC also encompassed Plaintiff's ability to carry out short and simple instructions, make simple work-related decisions, accept supervisors'

instructions, and ask questions or request assistance. *Id*. Thus, the RFC properly accounted for Plaintiff's moderately limited ability to carry out detailed instructions.

Moreover, Plaintiff does not show the ALJ's use of "uncomplicated commands involving simple instructions" instead of "detailed instructions" substantively changes the RFC. Regardless, any inconsistencies between the verbiage used by the ALJ and Dr. Bucklew are minor and can be harmonized. Thus, any inconsistency does not rise to the level of reversible error. *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (citation omitted); *Jones v. Kijakazi*, No. 21-00608-CV-W-BP, 2022 WL 1421956, at *2 (W.D. Mo. May 5, 2022) (finding the ALJ's RFC was "not inconsistent" with a medical opinion "merely because the ALJ did not quote [the medical professional] verbatim."); *Owens v. Saul*, No. 19-00402-CV-W-NKL, 2020 WL 2319880, at *4 (W.D. Mo. May 11, 2020) (finding an ALJ's choice of words was a "matter of semantics" not requiring remand).

### (ii) Fixed Instruction

Plaintiff also claims the RFC should have limited her to "fixed" instruction as referenced in Dr. Bucklew's opinion. Doc. 13 at 26. Before addressing this argument, the context of Dr. Bucklew's reference to "fixed" instruction is necessary. Dr. Bucklew was asked to rate Plaintiff's "adaptation limitations" related to responding appropriately to work setting changes, being aware of normal hazards and taking appropriate precautions, travelling in unfamiliar places or using public transportation, and setting realistic goals or making plans independently of others. R. at 100-01. He found Plaintiff is not significantly limited in her ability to adapt in these areas with one exception: her ability to respond appropriately to work setting changes is moderately limited. *Id*. When asked to explain adaptation limitations in "narrative form," Dr. Bucklew said Plaintiff "can complete tasks with fixed instruction and usual supervision." R. at 101.

9

The ALJ's RFC included the sole adaptation limitation in Dr. Bucklew's opinion. R. at 26. Specifically, the RFC limited Plaintiff to "occasional changes in the work-setting." *Id*. The RFC also detailed Plaintiff was able to understand, remember, and carry out "uncomplicated commands involving simple instructions"; make "simple work-related decisions"; and sustain concentration, persistence, and pace through "simple tasks." *Id*. While it does not use the phrase "fixed instruction," the RFC is not inconsistent with Dr. Bucklew's opinion and is supported by substantial evidence in the record.[7]

### (b) Dr. Morris

Plaintiff alleges the RFC is "additionally unsupported" because the ALJ improperly rejected Dr. Morris's opinion. Doc. 13 at 27-31. Under the applicable regulations, no single medical opinion or source is given specific evidentiary weight, including controlling weight. 20 C.F.R. § 404.1520c(a).[8] Instead, the ALJ must evaluate the persuasiveness of medical opinions by considering five factors: supportability,[9] consistency,[10] relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose of treatment relationship, extent of treatment relationship and examining relationship), specialization, and "other factors that tend to support or contradict a medical opinion . . . ." *Id.* § 404.1520c(a), (c)(1)-(5). When evaluating a medical opinion's persuasiveness, supportability and consistency are the "most important factors." *Id*. § 404.1520c(a).

---

[7] Additionally, the ALJ was not required to include all limitations set forth by Dr. Bucklew in the RFC. *See Hensley*, 829 F.3d at 932 (observing "there is no requirement that an RFC finding be supported by a specific medical opinion.").

[8] Because Plaintiff filed her application after March 27, 2017, 20 C.F.R. § 404.1520c applies.

[9] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[10] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

10

An ALJ must articulate how persuasive she finds all medical opinions in the record. *Id*. § 404.1520c(b). Three "articulation requirements" must be satisfied. *Id.* § 404.1520c(b)(1)-(3). First, "when a medical source provides multiple medical opinion(s) . . . [the ALJ] will articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors" identified above. *Id*. § 404.1520c(b)(1). Second, the ALJ must "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions." *Id*. § 404.1520c(b)(2). Third, when the ALJ finds "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors" set forth above. *Id*. § 404.1520c(b)(3).

After administering Plaintiff tests in January 2019, Dr. Morris opined Plaintiff should apply for "SSI" since she was unable to gain and maintain employment due to her mental illness, could not attain fifty percent or more attendance, "and will have inadequate productivity, product quality, and relationships with fellow workers and stress management abilities." R. at 837. The ALJ specifically addressed and rejected Dr. Morris's opinion because it was not supported by his own report; his testing showed Plaintiff was a poor reporter, dishonest, and manipulative; and his opinion was inconsistent with other medical providers' mental status examinations and Plaintiff's "good response" to medication. R. at 30 (citing 251, 269, 435, 487, 758, 793, 800, 803, 806, 836-37, 894, 1338, 1374, 1381, 1384).[11]

---

[11] Plaintiff does not argue the ALJ erred in finding Dr. Morris's opinion was not supported by his own report. Doc. 13 at 28. Instead, she raises the three arguments addressed in this Order.

11

### *(i)* *Reference to Certain Attributes Revealed by Testing*

Plaintiff avers the ALJ should not have considered the testing results (which indicate Plaintiff is dishonest, manipulative, and a poor reporter) when assessing how persuasive Dr. Morris's opinion was. Doc. 13 at 28. Here, the ALJ detailed how Dr. Morris's opinion was unsupported by his own report, including his testing of Plaintiff's IQ (average intellectual functioning) and his finding of no neuropsychological deficits. R at 29-30. The ALJ also observed Dr. Morris's opinion was inconsistent with Plaintiff's mental status examinations performed by other medical providers and her responsiveness to medication. R. at 30. The ALJ also acknowledged Dr. Morris's finding that Plaintiff is "dishonest, manipulative, and should be considered a poor reporter." *Id*. (citing R. at 837).[12] The ALJ does not expressly find Dr. Morris's opinion is unpersuasive because of this particular statement he made. *Id*. For this reason alone, Plaintiff's argument fails.

Even if the Court were to construe the ALJ's comment as an additional basis for discounting Dr. Morris's opinion, Plaintiff's argument is still without merit. Critically, Dr. Morris's opinion was based, at least in part, on what Plaintiff told him. R. at 833-37. Among other things, Plaintiff reported she had "visual hallucinations," "temper tantrums, explosive and angry outbursts," "is a self-mutilator," becomes "paranoid," "is childlike," is "severely isolated," has "paranoid delusions," and "can't work due to psychotic episodes." R. at 833-34. These self-reports appear throughout Dr. Morris's report and appear to be the framework for his opinion. *See* R. at 833-37. Although he found Plaintiff was dishonest and a poor reporter, there is no indication he explored the veracity or corroboration of her statements to him. *See id*. For example, Dr.

---

[12] According to testing administered by Dr. Morris, Plaintiff is "prone to deviant and manipulative behavior in the extreme," "undependable and unreliable," "susceptible to . . . dishonest behavior," "lacks straightforwardness," and "should be considered a poor reporter." R. at 835-37.

12

Case 4:21-cv-00004-WBG   Document 24   Filed 09/28/22   Page 12 of 16

Morris does not indicate he reviewed Plaintiff's medical records. *See id*. Had he done so, he would have observed Plaintiff routinely denied hallucinations and never reported paranoia or self-harm. *See* R. at 268, 317, 329, 341, 360, 373, 386, 396, 435, 453, 487, 506, 520, 581.[13]

The ALJ did not assess or use the testing results related to Plaintiff's character when she found Dr. Morris's opinion was unpersuasive. R. at 30. Instead, these testing results provided further support for the ALJ's finding that Dr. Morris's opinion was unsupported and inconsistent with his report and the medical records. *Id*. Accordingly, the Court finds the ALJ did not err in her evaluation of Dr. Morris's opinion.[14]

### (ii) Inconsistency with Mental Status Examinations

Plaintiff also argues the ALJ improperly discounted Dr. Morris's opinion due to other mental status examinations. Doc. 13 at 28. When evaluating Dr. Morris's opinion, the ALJ was required to articulate whether the opinion was consistent with the record. 20 C.F.R. § 404.1520c(b)(2). She explained Dr. Morris's opinion was inconsistent with, among other things, mental status examinations performed by other medical providers. R. at 30.

The ALJ properly considered the mental status examinations in the record and resolved the conflict between the generally normal mental status examinations and Dr. Morris's opinion. *See Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) (observing the ALJ's role is to resolve conflict among and weigh medical opinions); *Pennell v. Kijakazi*, No. 21-06112-CV-SJ-WJE, 2022 WL 2188966, at *4 (W.D. Mo. June 17, 2022) (holding the ALJ properly found medical opinions were

---

[13] After Dr. Morris issued his opinion, Plaintiff continued to deny hallucinations. R. at 942, 1043, 1138, 1224, 1267, 1338, 1359, 1364, 1370.

[14] To the extent ALJ's mention of the test results could be viewed as error, it was simply a failure to better explain why Dr. Morris's opinion was unpersuasive. The Eighth Circuit has continually held "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021) (citation omitted). Here, the ALJ's reasoning was "clear enough to allow for appropriate judicial review." *Id*. For this additional reason, the Court will not reverse and remand this matter.

unpersuasive because they were contrary to, among other things, "normal mental status findings").
Plaintiff cites one encounter in August 2018 that supports Dr. Morris's opinion (*see* Doc. 13 at 28) but ignores the numerous instances where her mental status was described as "normal," her judgment and insight were "good," her concentration ability and cognitive functions were "normal," and/or she was alert and oriented. *See* R. at 251, 255, 269, 318, 330, 341, 361, 374, 388, 435, 487, 520, 546, 582, 758, 1338.[15] She also disregards the instances where she was cognitively alert, and her mood was "euthymic." R. at 789, 808, 894, 1374, 1384.

While, at times, Plaintiff was observed as anxious, those instances were infrequent, and when they occurred, medical professionals still found Plaintiff had normal judgment, insight, thought processes, concentrating ability, and/or cognitive functions. *See* R. at 453, 582, 793, 799 811, 888, 891, 1359, 1364, 1370, 1390. In fact, on one occasion, which is cited by the ALJ, Plaintiff's affect was described as "anxious," but her physician stated, "anxiety continues to be well managed with the current medication." R. at 806. The substantial evidence in the record supports the ALJ's conclusion that Dr. Morris's opinion was inconsistent with the generally normal mental status examinations.

### *(iii)   Good Response to Medication*

Plaintiff maintains the ALJ erred in considering her good response to medication because any improvement from medication "was variable and short-lived." Doc. 13 at 18. In support, she identifies one occurrence in 2018 and a few instances in March 2019, June 2019, and December 2019 where her medications were adjusted or changed. *Id.* Plaintiff, however, overlooks her admittedly good response to medication adjustments or changes. *See* R. at 806 (August 2018), 803 (September 2018), 800 (October 2018), 894 (January 2019), 1381 (May 2019), 1384 (same),

---

[15] Other times, Plaintiff's mental status is simply identified as "oriented." *See, e.g.*, R. at 943, 1045, 1139, 1268, 1359.

and 1374 (October 2019). Like the mental status examinations, the ALJ appropriately concluded Dr. Morris's opinion was inconsistent with the record, which revealed Plaintiff responded well to medications, and her mental health symptoms were minimized by said medications. The Court finds the ALJ properly determined the persuasiveness of Dr. Morris's opinion.

**B.     The ALJ's Decision Being "Otherwise Unsupported"**

   **(1)     Missing Work or Being Off Task**

Plaintiff suggests the ALJ's decision is "otherwise unsupported" because a particular form that was provided to a physician failed to inquire about fatigue or absenteeism. Doc. 13 at 31-32. She argues that had the physical RFC assessment form inquired about Plaintiff being absent or off task (and assuming the physician indicated Plaintiff would be excessively absent or off task at least fifteen percent of the workday), no work would be available. *Id*. Setting aside the speculative nature of the argument, Plaintiff ignores it is her burden to establish the RFC. *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016). She points to no medical opinion in the record supporting her claim that her fatigue would cause her to be off task or absent from work. As such, she did not carry her burden of establishing a limitation related to missing work or being off task should have been included in the RFC. *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008). The Court finds the ALJ did not err in omitting a limitation related to absenteeism or being off task from the RFC.[16]

   **(2)     Prescription Medication and Injections for Migraines**

In her final argument, Plaintiff avers the ALJ's decision is "otherwise unsupported" because the ALJ improperly faulted her for not taking prescription medication or receiving injections for her migraines. Doc. 13 at 31-32. Plaintiff cites no authority for this proposition.

---

[16] In addition to the lack of opinion evidence supporting a limitation related to absenteeism and/or being off task cause by fatigue, the Court notes Plaintiff, more often than not, denied fatigue when asked by medical providers. *Compare* R. at 268, 317, 329, 360, 373, 386, 396, 419, 435, 487, 520, 551, 563, 615, 939, 1039, 1222, 1236, 1264, 1300, 1338, 1377, 1384; *with* R. at 506, 693, 789, 792, 796, 802, 805, 814, 820, 884, 887, 890, 1262, 1280, 1363, 1373.

*See id*. Nevertheless, during the January 2020 hearing before the ALJ, Plaintiff testified she was not taking prescription medication for her migraines, had not done so for approximately two years, and had not "done anything like Botox injections." R. at 78. Based solely on Plaintiff's hearing testimony, the ALJ stated Plaintiff did not take prescription medications and did not require aggressive treatment for her headaches. R. at 28. This statement is the source of Plaintiff's argument.

Setting aside the suggestion that the ALJ should not have relied on Plaintiff's testimony, Plaintiff cites nothing in the record establishing she was denied treatment because of insufficient insurance. Without such evidence, the ALJ was permitted to discount Plaintiff's argument that she did not take a prescription medication or receive injections for her migraines because insurance did not cover it. *See Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003) (citations omitted). While the record references Plaintiff's representation that insurance did not cover a prescription medication and had not approved a certain type of injection (R. at 131, 1372), there is nothing implying she was denied treatment because of insufficient insurance. Therefore, the Court finds this argument is without merit.

### IV.  CONCLUSION

For all the foregoing reasons, the Court finds the Acting Commissioner's decision is supported by substantial evidence on the record as a whole, and the correct legal standards were applied. Accordingly, the Acting Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

DATE: September 28, 2022    　　　　　　　　　　　*/s/ W. Brian Gaddy*
　　　　　　　　　　　　　　　　　　　　　　　　W. BRIAN GADDY
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE